**In the United States District Court
for the District of Kansas**

———————

Case No. 5:22-cr-40042-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

JUAN SANCHEZ-CHAVEZ,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Juan Sanchez-Chavez is charged under 8 U.S.C. § 1326 for reentering the United States after being convicted of an aggravated felony and removed to Mexico. Doc. 1. He moves to dismiss the indictment, claiming the removal order underlying his reentry charge was unconstitutionally entered by an official who had not been appointed in accordance with the Constitution's Appointments Clause. Doc. 13. For the following reasons, his motion is denied.

**I**

Sanchez-Chavez is an alien, Doc. 1 at 1, and is alleged to be a citizen of Mexico, Doc. 13 at 2; Doc. 14 at 1. In 2009, he was convicted in Missouri of Possession of a Controlled Substance with Intent to Distribute, a violation of state law, for which he received a 10-year prison sentence. Doc. 1 at 1; Doc. 13-1 at 1–2.

Four years later, Department of Homeland Security officers met Sanchez-Chavez at the Missouri prison where he was serving his sentence. Doc. 13 at 2. The officers issued Sanchez-Chavez two forms. *Id.* at 2–3. The first was a Notice to Appear, which alleged that Sanchez-Chavez was a Mexican citizen, that he illegally entered the United States, and that he had been convicted of possessing cocaine with intent to distribute. Doc. 13-2. The second was a Notice of In-

1

tent to Issue a Final Administrative Removal Order, Form I-851 (Notice of Intent), which told him the removal would proceed "without a hearing before an Immigration Judge" because he had "been convicted of an aggravated felony" and that he could petition for review "in the appropriate U.S. Circuit Court of Appeals." Doc. 13-3 at 1. Sanchez-Chavez signed the Notice of Intent, identified Mexico as the location to remove him to, and expressly waived his right to appeal the decision. *Id* at 2; Doc. 13 at 3.

The next day, a DHS officer entered the Final Administrative Removal Order to remove Sanchez-Chavez to Mexico. Doc. 13 at 4; Doc. 14-1 at 1. The Authorized Official who signed that Order was a Supervisory Detention and Deportation Officer of the DHS. Doc. 13 at 4; Doc. 14-1 at 1. Sanchez-Chavez was removed to Mexico in October 2013. Doc. 13-8 at 1; Doc. 14 at 2.

In June 2019, DHS officers found Sanchez-Chavez again in jail in Johnson County, Kansas. Doc. 13 at 6. The following month, the DHS issued Sanchez-Chavez a notice that it intended to reinstate the removal order against him. *Id.*; Doc. 13-8. But instead, he was charged with illegal reentry under 8 U.S.C. § 1326, pleaded guilty, and was imprisoned for 18 months. Doc. 13 at 7; Judgment in a Criminal Case at 1, *United States v. Sanchez-Chavez*, No. 19-20054 (D. Kan. Jun. 23, 2020). Sanchez-Chavez never contested the determination that he had been properly removed. Doc. 13 at 7. After he served his sentence, he was removed to Mexico again in October 2020. *Id.*; Doc. 1 at 1.

Sanchez-Chavez was apprehended in Kansas again in 2022 and was transferred to the custody of the U.S. Marshals. Doc. 13 at 7. He is again charged with illegal reentry. Doc. 1 at 1.

## II

Sanchez-Chavez moves to dismiss the sole count of the indictment, illegal reentry, by collaterally attacking the 2013 removal order under 8 U.S.C. § 1326(d). Doc. 13 at 1. He claims the officer who entered the removal order was not appointed in accordance with the Appointments Clause, so the removal order was unlawful. *Id.* That motion is denied because Sanchez-Chavez has not met the requirements to bring a collateral attack under section 1326(d).

### A

An alien charged with illegal reentry may challenge the legality of the underlying removal order if "the deportation proceeding effectively eliminate[d] the right of the alien to obtain judicial review." *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987); *see also United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019). So to collaterally attack a removal order, a defendant must demonstrate that he "exhausted any [available] administrative remedies," "the deportation proceedings . . . improperly deprived [him] of the opportunity for judicial review," and "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *see also United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021) ("[E]ach of the statutory requirements of § 1326(d) is mandatory."). The removal order is presumed valid, so to overcome that presumption, the alien bears the burden to show each of section 1326(d)'s requirements has been met. *United States v. Gonzalez-Fierro*, 949 F.3d 512, 521 (10th Cir. 2020) (citing *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010)).

### B

Sanchez-Chavez's motion is denied. Assuming without deciding that Sanchez-Chavez exhausted all available administrative remedies,[1]

---

[1] The expedited removal process allows the Department of Homeland Security to remove aliens convicted of aggravated felonies "without the involvement of an immigration judge." *Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1035–36 (10th Cir. 2016); 8 U.S.C. § 1228 (authorizing "[e]xpedited removal of aliens convicted of committing aggravated felonies"); 8 C.F.R. § 1238.1 (implementing the expedited removal process). After an alien is served with a Notice of Intent, the alien has 10 days to file a response, in which the alien may "rebut the allegations contained in the Notice of Intent." 8 C.F.R. § 1238.1(c).

Sanchez-Chavez was deported according to the expedited removal process because the DHS determined he had committed an aggravated felony. *See* Doc. 13-3 at 1. But the form he was given only permitted him to contest removal on factual grounds—either because he was a citizen, national, or lawful permanent resident of the United States or because he had not been convicted of the predicate criminal offense. *Id.* at 2. It did not permit him to challenge the legal process by which he was removed, including whether the entry of the order violated the Appointments Clause.

he still may not bring a collateral attack on the 2013 removal order because he had an opportunity for judicial review and the entry of the order was not fundamentally unfair.[2]

**1.** After an alien receives an expedited removal order, he has a waivable "opportunity to apply for judicial review" within 14 days. 8 U.S.C. § 1228(b)(3). Judicial review of removal orders is governed by 8 U.S.C. § 1252, three parts of which are relevant here. First, section 1252(a)(1) grants district courts limited authority to hear appeals from final removal orders. Second, section 1252(a)(2)(C) strips federal courts of "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed," among other things, an aggravated felony. But section 1252(a)(2)(D) clarifies that that provision does not "preclud[e] review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." Third, section 1252(d) allows a court to review a final removal order only if "the alien has exhausted all administrative remedies available to the alien as of right" and "another court has not decided the validity of the order." In sum, after an alien who has been convicted of an aggravated felony receives an expedited removal order, the alien has 14 days in which to raise fully exhausted legal or constitutional claims for judicial review in the appropriate court of appeals.

Sanchez-Chavez was not denied the opportunity for judicial review. He could have appealed the 2013 removal order to the Tenth Circuit to challenge the expedited removal process. The Notice of Intent specifically informed him that he could "remain in the United States for 14 calendar days [to] file a petition for review of th[e] order to the appropriate U.S. Circuit Court of Appeals as provided for in

---

The Tenth Circuit has not determined whether this is sufficient to satisfy the obligation to exhaust remedies. As a result, this Memorandum and Order assumes without deciding that the exhaustion requirement has been met because Sanchez-Chavez's claims fail on other grounds.

[2] Sanchez-Chavez could have argued in his 2019 prosecution for illegal reentry that the 2013 removal order on which it was based was unlawful. He did not do so. Neither party has addressed whether that failure precludes him from asserting that argument in this subsequent prosecution. As a result, this Memorandum and Order assumes, as do the parties, that the argument is properly presented in this case.

. . . 8 U.S.C. 1252." Doc. 13-3 at 1. Sanchez-Chavez chose not to do so. Instead, he explicitly waived his right to judicial review, acknowledging that he understood but "d[id] not wish this opportunity." *Id.* at 2.

Sanchez-Chavez offers two arguments against this conclusion. He first argues that this waiver "was not knowing and intelligent" because it "was not printed in Spanish nor read to him in Spanish." Doc. 13 at 13. This argument stems from a regulatory requirement that the officer issuing the Notice of Intent "must either provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands." 8 C.F.R. § 238.1(b)(2)(v).

Neither party disputes that Sanchez-Chavez was only provided the form in English. *See* Doc. 13 at 13; Doc. 14 at 12. But Sanchez-Chavez does not allege that he could not understand English when he signed the waiver in 2013. He incorrectly attempts to place the burden on the Government by claiming, "there is no reason to conclude that [Sanchez-Chavez] sufficiently understood English such that his waiver was knowing and intelligent." Doc. 13 at 13; *see also* Doc. 15 at 2–3 (arguing that the Government's evidence "is insufficient to show that in 2013, English was 'a language that the alien underst[ood]'" (quoting 8 C.F.R. § 238.1(b)(2)(v)) (alteration in original)). Those statements "are insufficient to overcome the presumption of regularity accorded prior convictions." *United States v. Krejcarek*, 453 F.3d 1290, 1298 (10th Cir. 2006).

And there is substantial evidence that undermines Sanchez-Chavez's language-barrier contention. In the 2019 prosecution, Sanchez-Chavez claimed he "learn[ed] fluent English very early" in life, as he attended a Missouri public school starting at age 10. Doc. 14-2 at 1. He also presented evidence in that matter that he worked as an English teacher in Mexico as early as 2016 and was a certified interpreter in Mexico. *Id.* at 2, 7. There is no evidence or reason to believe that Sanchez-Chavez did not understand English in 2013 or, due to a language barrier, was incapable of knowingly and voluntarily waiving his rights. To the contrary, as noted in the hearing on this motion, the gist of his argument is that the immigration process is so complicated that Sanchez-Chavez would have benefitted from having a learned immigration attorney advise him of his options prior to signing the 2013 waiver. That is insufficient to establish that his exe-

cution of the waiver (printed in English) was not knowing and intelligent.

Sanchez-Chavez next alleges he was denied the opportunity for judicial review because "the Tenth Circuit does not permit judicial review of removal orders that have not been reviewed by the BIA," or Board of Immigration Appeals. Doc. 13 at 14. He cites *Robles-Garcia v. Barr*, 944 F.3d 1280 (10th Cir. 2019), in which the defendant had faced ordinary removal proceedings before an immigration judge, challenged the immigration judge's decision to the BIA, then appealed that decision to the Tenth Circuit, *id.* at 1282–83. At the Tenth Circuit, the defendant "assert[ed] for the first time a new argument challenging the BIA's order removing her from the United States." *Id.* at 1283. The Tenth Circuit held she needed to raise that argument before the BIA before seeking judicial review. *Id.* at 1283–84.

The holding of *Robles-Garcia* does not aid Sanchez-Chavez because he was removed according to the expedited removal process. Even if Sanchez-Chavez could not challenge the legal basis of his removal to the BIA, he could have raised his constitutional claim directly to the Tenth Circuit. *See, e.g.*, *Osuna-Gutierrez v. Johnson*, 838 F.3d 1030, 1032–33 (10th Cir. 2016) (reviewing an alien's legal challenge to the expedited removal proceedings without prior review by the BIA). He chose to waive that opportunity. *See* Doc. 13-3 at 2. Because Sanchez-Chavez had an opportunity for judicial review during the 2013 removal proceeding, he may not now question the constitutionality of that removal.

**2.** A defendant charged with illegal reentry who wishes to collaterally attack a removal order must also show that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "To demonstrate fundamental unfairness, the noncitizen must establish a reasonable likelihood that, but for the complained-of error, he would have avoided removal." *United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019) (citing *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004)). The defendant must therefore "show both that there was a procedural error during his expedited removal process and that that procedural error prejudiced him." *United States v. Gonzalez-Fierro*, 949 F.3d 512, 521 (10th Cir. 2020) (citing *United States v. Sandoval*, 390 F.3d 1294, 1299 (10th Cir. 2004)).

The only procedural error Sanchez-Chavez alleges is that the official who issued the removal order did not obtain his position in ac-

cordance with the Constitution's Appointments Clause. Doc. 13 at 15, 20 (citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). Whether that is in fact a procedural error is a difficult question that forms the bulk of the parties' dispute. But it is unnecessary to resolve in this case: even accepting Sanchez-Chavez's argument that there was a procedural error because of the *Lucia* issue, he neither claims nor presents evidence that he would have avoided removal if he had been tried before an official appointed in accordance with the Appointments Clause.

Citing only a Ninth Circuit case, Sanchez-Chavez claims that "prejudice . . . should be conclusively presumed." Doc. 13 at 15 (citing *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012)). Not so. The Tenth Circuit addressed a similar argument in *United States v. Rangel de Aguilar*, 308 F.3d 1134 (10th Cir. 2002), in which the defendant claimed her deportation hearing was unfair because it was not held before a neutral magistrate, *id.* at 1136. But even though the defendant raised constitutional objections to the removal process, the Tenth Circuit refused to presume she had been prejudiced, determining instead that she presented insufficient evidence that the claimed procedural defect would have changed the outcome. *See id.* at 1138–39. Prejudice was not presumed there, nor will it be here. And absent that presumption, Sanchez-Chavez has no evidence or argument that he has been prejudiced by the claimed error. He has not shown the entry of the 2013 removal order was fundamentally unfair or would have been substantively different depending on the selection or confirmation of the decision-maker. As a result, he may not raise a collateral attack on that removal order under 8 U.S.C. § 1326(d). *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

### III

For the reasons set forth above, Sanchez-Chavez's motion to dismiss, Doc. 13, is DENIED.

It is so ordered.

Date: February 16, 2023         s/ Toby Crouse
                                Toby Crouse
                                United States District Judge